IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02600-CMA-MJW

KEITH FRAZIER,

Plaintiff,

v.

P. FLORES, 2 Unit Manager, CCCF,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Docket No. 25)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case entered by Judge Christine M. Arguello on November 24, 2014 (Docket No. 11).

**PLAINTIFF'S ALLEGATIONS**

This action is brought pursuant to 42 U.S.C. § 1983 by pro se incarcerated plaintiff Keith Frazier. Following an Order issued by Senior Judge Lewis T. Babcock (Docket No. 9), only one of the original six defendants remains, and all claims but plaintiff's First Amendment retaliation claim were dismissed as legally frivolous.[1] In his rambling Amended Complaint (Docket No. 6), plaintiff seeks monetary damages and alleges the following in his retaliation claim against defendant P. Flores, the 2 Unit Manager at Crowley County Correctional Facility ("CCCF").

---

[1] Plaintiff has filed an interlocutory appeal of that Order to dismiss in part. (Docket Nos. 31 and 33).

2

On September 22, 2013, plaintiff's cell at CCCF was searched. Just eleven days later, on October 3, it was searched again by officers Infante, Janssen, and Romera. After the latter search, plaintiff noticed that a large bag containing his personal property was being carried away by the officers, but the "Shakedown List" they had left behind made only vague references to a small handful of the things that had been taken. Consequently, plaintiff immediately requested that defendant Flores come to plaintiff's cell to see plaintiff about the situation. About ten minutes later, Flores arrived, and plaintiff mentioned to him that he wanted an opportunity to challenge/contest the seizure of his property. Plaintiff had previously brought a civil action in this court, Civil Action No. 13-cv-00891-LTB, against Flores and others for almost an identical occurrence on June 14, 2011. Already annoyed at having been summoned by plaintiff to deal with yet another personal property search/confiscation issue and in a very foul mood for that reason, Flores demanded that plaintiff describe with particularity all of the items plaintiff felt were missing and show proof ownership right then and there. Since the officers had trashed plaintiff's living area, plaintiff responded that this would be impossible for him to do on such short notice. To speed up this process, plaintiff asked Flores to be allowed to see what was in the bag of items taken from him, but this request was tersely denied. Plaintiff reminded Flores that per the Administrative Regulations ("ARs"), part of which plaintiff read to Flores, plaintiff had a right to know what was seized from him, and plaintiff requested that Flores re-do the Shakedown List so as to delineate all of the things that had been taken from him. That request was denied in an almost mocking manner. Plaintiff was able to name only a couple of missing items at that time and did not have proof of ownership right there, so Flores declared that he had given plaintiff the

chance to re-claim his property, that he had failed to do so, and that Flores could now discard it.  As Flores began to leave, plaintiff stopped him once more to request that he at least be given the requisite ten days to arrange to have his property sent home or released to a friend or family member in accordance with the ARs, which plaintiff quoted to Flores.  Flores made a joke of plaintiff's explanation of the rules, abruptly refused plaintiff's request, and left.

The following items were missing from plaintiff's cell: a hat, cup/plant, guitar pick, double-barrel pencil sharpener, numerous shoelaces, several shoe pads, a number of fancy legal work paperclips, a large amount of ketchup and mustard packets, and a folder containing a large amount of paperwork plaintiff was planning to use for researching and writing a book on the music industry, including weekly charts, album reviews, artist interviews, biographies, special articles and features, and photos.  That paperwork was either sent to plaintiff by friends and relatives or was culled from various publications since at least June 14, 2011.

Upon discovery of the items missing, plaintiff immediately requested that Flores return to plaintiff's cell.  Flores returned a short time later, and plaintiff requested that the paperwork be returned to him immediately because pursuant to the ARs, it should never have been confiscated.  Flores, however, "<u>still</u> stubbornly refused to return it to him, demonstrating that his actions were most likely motivated by retaliatory intent by replying that since the plaintiff's previous round of complaints, grievances, and lawsuits against him on this topic had (he assumed) failed, he sure wouldn't be getting what he wanted this time either."  (Docket No. 6 at 4).  Flores also rudely ignored plaintiff's request to arrange for a disposition of his research materials in accordance with the

ARs. Flores's "attitude/demeanor when the plaintiff first called him to his cell . . to contest the confiscation of his property was as if he was thinking 'here's Frazier complaining again,' and the fact that he then tersely issued a demand that was impossible for him to satisfy in order to simply get him to return what should never have been taken from him in the first place just screams 'vindictiveness' . . . . Then when the plaintiff got him to return to his cell one last time in order to make one final plea to him to give back his property, the fact that Flores even brought up his prior lawsuit against him for having done the very same thing to him 2 ½ years earlier in cruelly refusing to even so much as allow him to merely mail home or release said items in lieu of maintaining possession of them, again in the face of regulations that stipulated that as being proper procedure, leaves no doubt that Flores had a fair amount of revenge on his mind in proceeding down his path of destruction . . . ." (Docket No. 6 at 14).

Later that day, plaintiff ran into Case Manager Infante, who said she had supervised the search and authorized the confiscation of the items, and she repeated the same "mindless excuse" as Flores had stated that because it contained information taken from magazines and newspapers, it was deemed to have been altered and so was legitimately taken.

On October 8, 2013, plaintiff was summoned to meet with Flores to resolve plaintiff's Informal Grievance against him. "Flores demonstrated the true retaliatory underpinnings of his cruel destruction of the plaintiff's property from the very moment he entered the room, telling the plaintiff that he'd just gotten a couple of white towels for him to finally remedy a months-old laundry issue, but that he would not give them to him now since the plaintiff was putting him through the same old hassles (as 2011) again."

(Docket No. 6 at 6). Plaintiff opted to go to the gym rather than continue the pointless token discussion that Flores had been having with him, which prompted Flores to declare that the issue had been resolved because plaintiff had abandoned it.

On October 11, 2013, Flores further retaliated against plaintiff by forcing plaintiff to move to an entirely different unit on a moment's notice after plaintiff and his new cellmate had a minor disagreement. Standard procedure would have been to move the cellmate since he was the person lodging the complaint and had lived there only for a matter of weeks whereas plaintiff had lived there for 22 months. As a result, plaintiff lost the easier job he had worked up to in his pod and had to start over, was unable to practice with his basketball team, was no longer with a lot of good friends, and now had to put together a new personal schedule/routine. On October 22, 2013, Flores retaliated against plaintiff yet again by moving him to still another new unit, to further disrupt his life.

On December 2, 2013, plaintiff submitted a completed lost/damaged/stolen personal property claim form to Case Manager Torres. With a "measure of retaliatory intimidation thrown in," Torres quickly called Flores to report that plaintiff had submitted the list. Flores informed Torres that he was aware plaintiff was suing him again and told plaintiff that the paperwork that plaintiff attached to his property claim to prove ownership of the publications contained evidence that would support a COPD charge of fraud. Plaintiff, however, was never charged with a violation, but his paperwork damaged/stolen personal property claim and attached receipts mysteriously disappeared.

On December 3, 2013, "Torres added to her retaliation against the plaintiff on

behalf of UM Flores" by serving plaintiff with a warning letter regarding the filing of frivolous grievances. (Docket No. 6 at 7).

On May 21, 2014, plaintiff was summoned to see Flores about a grievance he had submitted two days before. Flores did not make a good faith effort to resolve the issue but instead retaliated against plaintiff "by assuming an accusatory stance in threatening to file disciplinary charges against him." (Docket No. 6 at 8). Charges were never brought, but Flores "got back at the plaintiff" because plaintiff's cell was "ransacked" about 1.5 hours later, and plaintiff's only copy of that grievance and other items were seized by Sgt. Cardenias and Ms. Fry, who did Flores' "dirty work" for him because they had no business being involved with such an activity since one works on the opposite end of the prison in the segregation unit, and the other has more pressing duties as a case manager.

## **DEFENDANT'S MOTION TO DISMISS**

Now before the court for a report and recommendation is the Defendant's Motion to Dismiss (Docket No. 25) in which defendant Flores seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because plaintiff has not alleged the following elements required to state a First Amendment retaliation claim under § 1983: (1) personal participation in the alleged violation, (2) defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) defendant's action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct. Plaintiff filed a response (Docket No. 28), and defendant filed a reply (Docket No. 29). The court has carefully considered these motion papers as well as applicable Federal Rules of Civil

Case 1:14-cv-02600-CMA-MJW   Document 34   Filed 05/19/15   USDC Colorado   Page 7 of 15

7

Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed, makes the following findings, conclusions of law, and recommendation.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to

8

believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

A court generally considers only the contents of the Complaint when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6).  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'"  Henson v. Bank of Am., 935 F. Supp.2d 1128, 1136 (D. Colo. 2013) (quoting Gee, 627 F.3d at 1186).  "If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a motion to dismiss."  Id.  Here, in his Amended Complaint, plaintiff makes reference to numerous attachments.  Those referenced attachments, however, were not attached to the Amended Complaint (Docket No. 10) but were attached to the original Complaint (Docket No. 1).  They have not been considered by the court in making this report and recommendation.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

10

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).

Here, this court agrees with the defendant that plaintiff's allegations premised on the search of his cell and seizure of his property in October 2013 and May 2014 do not allege the requisite personal participation by Flores. Instead, with regard to the search in October, plaintiff alleges that it was conducted by Officers Infante, Janssen, and Romero, not Flores. In fact, plaintiff avers that Officer Infante told him she supervised the search and authorized the confiscation. Furthermore, while plaintiff complains about Flores calling plaintiff to his office to discuss plaintiff's Informal Grievance related to the search and refusal to return the property, defendant correctly asserts that responding to a grievance does not constitute personal participation in any alleged underlying constitutional violation. See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).

Regarding the search conducted over five months later in May 2014, plaintiff alleges the search was conducted by Officers Cardenias and Fry, not Flores. The court notes that plaintiff attempts to implicate Flores in this search by asserting that shortly before the search, plaintiff was talking to Flores about another grievance and that the two officers who conducted the search "normally would have no business being involved with such an activity." These allegations, however, do not demonstrate that Flores ordered or had anything to do with the search.

In any event, defendant further correctly asserts that even if the plaintiff has sufficiently alleged personal involvement, plaintiff has not sufficiently plead a claim for a First Amendment violation. It is well-settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). However, "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." Id. (citation omitted) (emphasis in original). Factual allegations consisting only of engagement in protected activity, for example filing prison grievances or lawsuits, "[do] not establish the requisite causal connection for [a] retaliation claim. If it did, litigious prisoners could claim retaliation over every perceived slight and resist summery judgment simply by pointing to their litigiousness." Strope v. Cummings, 381 Fed. App'x 878, 883 (10th Cir. 2010) (unpublished). Furthermore, temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim. See Friedman v. Kennard, 248 Fed. App'x 918, 922 (10th Cir. 2007) (citing cases) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged

12

exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.").

Plaintiff may make a showing of retaliation by demonstrating the following: 1) he engaged in constitutionally protected activity; 2) defendant's actions caused plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) defendant's "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Shero v. City of Grove, Okla., 510 F.3d 1196, 1203 (10th Cir. 2007) (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)). The third element requires that the plaintiff show that defendants' retaliatory motive was a "but for" cause of the defendants' actions. Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990). Here, defendant asserts that plaintiff's Amended Complaint fails to satisfy the second or third elements of this test. This court agrees.

As asserted by the defendant, with regard to the second element, while plaintiff claims that Flores was retaliating against him for filing grievances and lawsuits, there can be no question that the plaintiff has not been dissuaded from either activity. In fact, plaintiff himself alleges in his pleading that he submitted multiple grievances following the searches and cell moves. (Docket No. 6 at § D, ¶¶ 10, 15, 16). In addition, the court may take judicial notice that the plaintiff continued to file civil actions, in this court and in state court, as detailed in the defendant's motion. (Docket No. 15 at 8). As noted by the defendant, in a previous action in this District, the court rejected plaintiff's effort to establish a retaliation claim based on the filing of grievances, noting plaintiff's continuation of such activity:

> Defendant argues that when Plaintiff grieved Defendant Barker, no actions or inactions taken by Defendant Barker would chill a person of ordinary firmness from continuing to engage in that activity. (*Id.*) The record in this matter belies Plaintiff's contention that he has been dissuaded from filing grievances as a result of Defendant Barker's alleged actions. As discussed *infra*, Plaintiff filed another grievance just a couple of weeks after the alleged shakedown. Moreover, Plaintiff has not alleged or provided evidence that he has been dissuaded from filing grievances or lawsuits. *See also Escobar v. Brown*, No. 06–cv–01222–CMA–KLM, 2010 WL 5230874, at *5–6 (D. Colo. Dec. 16, 2010) (finding Plaintiff was not afraid to file grievances as a result of unsubstantiated allegations of threats of retaliation, as evidenced by Plaintiff's continuing filing of grievances). To the contrary, in his deposition Plaintiff admitted that, despite any actions taken by Defendant Barker, his ability to submit grievances and lawsuits was not chilled in any way. Specifically, Plaintiff stated he is "never afraid to file grievances, that's for sure," that he "always ask[s] for grievances, just as [his] right," and that he "wasn't afraid of filing grievances again, because of [fear of retaliation]." (Mot., Ex. A at 24, ll. 4–21.) Thus, **the court finds that Plaintiff's assertions do not satisfy this required element for a claim of retaliation, because Plaintiff's exercise of protected conduct was not chilled by the alleged retaliation**.

Frazier v. Barker, Civil Action No. 10-cv-02534-CMA-KMT (Docket No. 96 in that action) (D. Colo. Feb. 11, 2013) (emphasis added), adopted and affirmed (Docket No. 97) (D. Colo. Mar. 5, 2013). In addition, the court further agrees with the defendant that plaintiff's transfer to another cell when his roommate filed a complaint against him and then again 11 days later would not chill a person of ordinary firmness from continuing to engage in protected speech. See Brodsky v. City & County of Denver, 2011 WL 4972087, at *12 (D. Colo. Oct. 19, 2011) ("The claimed retaliatory actions were reassignment to another housing unit and a search of his cell. Neither of these actions demonstrate any injury to [plaintiff]." Plaintiff was not moved to a punitive or segregation housing unit, and "a search of a cell is an ordinary incident of prison life . . .").

14

Furthermore, with regard to the third element, the Amended Complaint does not demonstrate that any adverse action, or any action, by Flores, was substantially motivated by plaintiff's exercise of constitutionally protected conduct. There is no temporal proximity between the 2013-2014 incidents plaintiff complains of here and the plaintiff's previous case against Flores that plaintiff cites, Civil Action No. 13-cv-00891-LTB, for what plaintiff describes as almost an identical occurrence on June 14, **2011**.[2] That prior civil action was filed more than five months before the 2013 cell searches, more than six months before cell moves, and over a year before the May 2014 cell search. Moreover, that earlier case was dismissed prior to service on any defendant and prior to the entry of appearance on behalf of any defendant, and plaintiff's appeal was denied by the Tenth Circuit without participation by any defendant. See Docket Nos. 6 and 36 in 13-cv-00891-LTB. This court finds that the plaintiff's allegations do not establish the requisite causal connection for a retaliation claim. Like the plaintiff in Strope, plaintiff's "attribution of retaliatory motive is conjectural and conclusory." Strope, 381 Fed. App'x at 883.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss (Docket No. 25) be **granted.**

---

[2]The Tenth Circuit noted that plaintiff "alleged correctional officers searched his cell and seized 'a manila envelope full of weekly charts, album reviews, artist interviews, special articles and features, photos, et. that were culled from his subscription music publications,' . . . ." Civil Action No. 13-cv-00891-LTB, Docket No. 36 at 2. Like the officers here, the officers in the plaintiff's earlier case claimed the items seized "were contraband because they had been clipped out of the original publications and were therefore altered." Id. The court noted in its ruling that it was "not at all clear" that the prison's interpretation of the contraband regulations at the time was incorrect. Id. at 3.

15

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: May 19, 2015         s/ Michael J. Watanabe
       Denver, Colorado     Michael J. Watanabe
                            United States Magistrate Judge